```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROBERT P. JONAS, JR.,

                    Plaintiff,

       -against-

THE INCORPORATED VILLAGE OF CENTRE
ISLAND,

                    Defendant.
----------------------------------------------------------------X
```

For Online Publication Only

**MEMORANDUM & ORDER**
14-CV-5782 (JMA)(SIL)

**FILED**
**CLERK**
2/25/2016 3:25 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff alleges that, as the result of enactment of a zoning ordinance, defendant effectuated a regulatory taking of his real property in violation of both the Fifth Amendment of the United States Constitution and Article I, Section 7 of the New York State Constitution.

## I. Background

The following facts are taken from plaintiff's complaint and assumed to be true for the purposes of this motion.

Plaintiff Robert P. Jonas, Jr. is the owner of real property located at 223 Beach Road (the "Property") in the Incorporated Village of Centre Island ("Centre Island"). (Compl. ¶ 3.) Defendant Centre Island is a municipal corporation located in Nassau County, New York. (Id. ¶ 2.) The Property consists of unimproved beachfront land that is exclusively zoned for a single-family dwelling. (Id. ¶ 6.)

In 1956, plaintiff's father, Duncan Sterling, Jr., conveyed the Property by deed to plaintiff's mother, Bessie Lee Jonas. (Id. ¶ 4.) Plaintiff inherited the property after the death of Mrs. Jonas in 1971. (Id. ¶ 5.)

1

Because the Property is situated between tidal wetlands, it is regulated by the New York State Department of Environmental Conservation ("NYSDEC"). (Id. ¶ 7.) In 1991, plaintiff applied for and was granted a permit by the NYSDEC to develop a single-family dwelling on the Property; the permit expired before any dwelling was constructed on the Property. (Id. ¶¶ 8–10.) In 1992, Centre Island amended the Village Code of the Village of Centre Island Chapter 122 (the "Zoning Code") to prohibit the erection of a building, or any portion thereof, below an elevation of twelve feet above mean sea level (the "Elevation Restriction") within the Residence A-1 zone (which includes the Property). (Id. ¶ 11.)

In 2006, after securing a second NYSDEC permit to construct a single-family residence on the Property, plaintiff applied to the Centre Island Building Department ("Building Department") for a building permit. (Id. ¶¶ 12–13.) The Building Department denied plaintiff's application because it violated four zoning restrictions, including the Elevation Restriction, setback restrictions, frontage requirements, and minimum lot size restrictions. (Id. ¶ 14.) Plaintiff applied to the Centre Island Board of Zoning Appeals (the "BZA") for variances from the Zoning Code, and the BZA granted each variance except for the variance from the Elevation Restriction. (Id. ¶¶ 16–17.) On January 7, 2011, plaintiff commenced an Article 78 proceeding against the BZA in New York Supreme Court to obtain a variance on the Elevation Restriction. The Supreme Court issued an order granting the variance, but the order was ultimately reversed on appeal. (Id. ¶¶ 21–24.)

Plaintiff alleges that without a variance from the Elevation Restriction, the Property cannot be developed for any purpose. (Id. ¶ 18.) Plaintiff contends that Centre Island's adoption of the Elevation Restriction and denial of a variance to the Elevation Restriction resulted in a regulatory taking of the Property under both the United States and New York Constitutions. According to

2

plaintiff, prior to the adoption of the Elevation Restriction, the Property was a buildable lot zoned for residential development with a fair market value over $1,750,000.  (Id. ¶¶ 27–28.)  Plaintiff alleges that after the denial of a variance to the Elevation Restriction, the Property was deprived of all economically viable use and the value of the Property "has been severely, significantly and materially reduced and damaged."  (Id. ¶¶ 29–30.)

On September 5, 2014, plaintiff filed the instant action in New York Supreme Court, Nassau County, alleging that, as the result of the above acts, defendant effectuated a regulatory taking of the Property in violation of both the Fifth Amendment of the United States Constitution and Article I, Section 7 of the New York State Constitution.  On October 2, 2014, defendant removed the case to federal court, claiming federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  Discussion

### A.  Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully."  Iqbal, 556 U.S. at 678.

3

In determining the plausibility of a complaint, the Court may consider documents that are "integral" to a complaint as long as: (1) the record is clear that "no dispute exists regarding the authenticity or accuracy of the document"; and (2) it is "clear that there exist no material disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

## B. Regulatory Takings Claims

The text of the Fifth Amendment forbids the taking of private property for public use without just compensation. U.S. Const., Article 2, § 13. That constitutional guarantee is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123–24 (1978). However, "the Constitution contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property." Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Plan. Agency, 535 U.S. 302, 321–22 (2002).

"[A] plaintiff seeking to challenge a government regulation as an uncompensated taking of private property" may proceed by showing (1) that there was a "total regulatory taking" or (2) that there was a partial regulatory taking that did not rise to the level of total regulatory taking. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539 (2005). A total regulatory taking requires a regulation that deprives a property owner of "all economically beneficial uses" of her land. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992). Under that rule, a regulation must "wholly elimate[] the value" of the property such that "no productive or economically beneficial use of land is permitted." Id. at 1017.

A regulation that results in anything less than a "complete elimination of value" or a "total

4

loss" is evaluated under the Penn Central analysis for partial regulatory takings. Lingle, 544 U.S. at 539–40. Under the Penn Central analysis, courts weigh: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits of the economic life to promote the common good." Id. at 538–39 (internal quotation marks omitted) (citing Penn Central, 438 U.S. at 124).

**C. Ripeness Analysis**

Defendant argues that since New York has not denied plaintiff just compensation through a state procedure, his takings claim is not ripe for adjudication. (Def. Br. at 10.) Plaintiff's claim is ripe and justiciable because defendant removed the case from state to federal court.

"[R]ipeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." Marchi v. Board of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999). Particularly in takings cases, courts are admonished from deciding disputes involving abstract disagreement over the constitutionality of zoning regulations and only asserting jurisdiction when the "factual setting makes such a decision necessary." Pennell v. City of San Jose, 485 U.S. 1, 10 (1988); see also Kittay v. Giuliani, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000), aff'd, 252 F.3d 645 (2d Cir. 2001) ("Particularly, as here, where the dispute involves administrative and zoning regulations, the ripeness doctrine restrains courts from entangling themselves in abstract disagreements over policies, freeing agencies from judicial interference until an actual administrative decision has been formulated and its effects concretely realized.").

The Supreme Court has established a two-pronged test for evaluating the ripeness of takings-type claims. Williamson Cnty. Regional Planning Commission v. Hamilton Bank of

Johnson City, 473 U.S. 172, 186 (1985). In Williamson, the Court explained that because the Constitution does not require just compensation "be paid in advance of, or contemporaneously with, the taking," any government action is not "complete" until the party seeking just compensation has exhausted available "reasonable and adequate provision[s] for obtaining compensation after the taking." Id. at 195. The first prong requires that the government entity responsible for implementing the regulation at issue has reached a "final decision." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). The second prong requires that the plaintiff sought compensation "by means of an available state procedure." Id. A takings claim is ripe for review by a federal court only when both of the Williamson prongs have been satisfied. Defendant does not dispute that plaintiff received a final decision on his application for a variance from the Elevation Restriction. (Def. Reply Br. at 3, n.1.). The Court's ripeness analysis, therefore, focuses solely on the second Williamson prong to determine whether plaintiff sought compensation through an available state procedure.

In Sherman v. Town of Chester, the Second Circuit addressed the Williamson ripeness requirement as applied to a takings claim removed from state to federal court. 752 F.3d 554, 564 (2d Cir. 2014). The Second Circuit held that "when a defendant removes a takings claim from state court to federal court, the second prong of Williamson County is satisfied." Sherman, 752 F.3d at 564.

Defendant argues that the Second Circuit "disregarded the Supreme Court's bright-line rule" by holding that the ripeness requirement outlined in Williamson is satisfied "despite the fact that just compensation was never denied." (Def. Br. at 10.) Defendant maintains that "merely bringing a compensation claim in state court" is insufficient "to ripen a takings claim," but instead Williamson requires that the plaintiff completely exhaust the state procedure and compensation is

6

in fact denied. (Def. Br. at 10.)

The Second Circuit's decision in Sherman governs. Moreover, to the extent defendant believes that the Second Circuit's decision in Sherman cannot be squared with the Supreme Court's decision in Williamson, the Court disagrees.[1] Defendant removed this case from the Supreme Court of the State of New York, County of Nassau on October 2, 2014. (Dkt. No. 1.) "[W]hen a defendant removes a takings claim from state court to federal court, the second prong of Williamson County is satisfied." Sherman, 752 F.3d at 564. Therefore, plaintiff satisfied Williamson's second prong and his takings claim is ripe for review.

### D. Plaintiff's Property Interest

Defendant argues that, as a threshold matter, because the Elevation Restriction and other zoning requirements pre-dated plaintiff's acquisition of the Property, plaintiff never had a property interest capable of being taken. (Def.'s Br. at 15.) In response, plaintiff argues that because the original purchase of the Property by plaintiff's mother pre-dated the Elevation Restriction, as a matter of New York law plaintiff succeeds all his mother's rights through inheritance—including the right to build a single family residence on the property. (Pl.'s Opp. at 13.)

As explained below, even if plaintiff inherited the Property after Elevation Restriction was enacted, plaintiff may still have a property interest capable of being taken.

A cognizable property interest must exist in order for that property interest to be "taken." See United States v. Willow River Power Co., 324 U.S. 499, 502–03 (1945). A federally protected property interest must be based on a "legitimate claim of entitlement to it." Board of Regents of

---

[1] As the Second Circuit explained in Sherman, "[b]ecause Williamson County is a prudential rather than a jurisdictional rule, we may determine that in some instances, the rule should not apply and we still have the power to decide the case." Sherman, 752 F.3d at 564 (quoting Sansotta v. Town of Nags Head, 724 F.3d 533, 545 (4th Cir.2013); see also Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 733–34 (1997) ("There are two independent prudential hurdles to a regulatory takings claim brought against a state entity in federal court.").

State Colleges v. Roth, 408 U.S. 564, 577 (1972). Such a claim does not arise under the Constitution, but instead from an independent source, such as state or local law. Id.

In Palazzolo, the Supreme Court held that a takings claim "is not barred by the mere fact that title was acquired after the effective date of the state-imposed restriction." Palazzolo v. Rhode Island, 533 U.S. 606, 630 (2001). However, Palazzolo does not stand for the proposition that every property owner will stand in the shoes of the prior owner. Taken to a logical extreme, allowing the right to challenge a regulatory scheme to run with the land would confer that right upon any subsequent property owner affected by the regulation, regardless of when the regulation was enacted or when the property owner took title. See Appolo Fuels, Inc. v. United States, 381 F.3d 1338, 1349 (Fed. Cir. 2004).

Courts have held that "reasonable investment-backed expectations are shaped by the regulatory regime in place as of the date [plaintiff] purchased the [property interest] at issue." Appolo Fuels, Inc., 381 F.3d at 1349; see also Palazzolo, 533 U.S. at 633 (O'Connor, J., concurring) (arguing that "the regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those expectations."); Mehaffy v. United States, 499 Fed. App'x 18, 22 (Fed. Cir. 2012) ("[R]easonable investment-backed expectations are measured at the time the claimant acquires the property.").

Even if plaintiff inherited the property subsequent to the Elevation Restriction and other zoning regulations, the Court will not categorically conclude that plaintiff did not have a property interest sufficient to form the predicate for a takings claim. Under Palazzolo and its progeny, courts will not categorically bar a takings claim on the sole ground that the regulation was imposed after the acquisition of title to the property. See Palazzolo, 533 U.S. at 630 ("It would be illogical, and unfair, to bar a regulatory takings claim because of the post-enactment transfer of ownership

8

where the steps necessary to make the claim ripe were not taken, or could not have been taken, by a previous owner."). Instead, the Court will analyze the reasonable investment backed expectations in light of the regulatory regime in place at the time of acquisition of the property, as well as the method and circumstances behind the acquisition of the Property.

**E. Regulatory Takings**

Plaintiff has sufficiently alleged both a categorical and partial regulatory takings claim to survive the motion to dismiss stage. Plaintiff alleges in the complaint that because of the Elevation Restriction, the Property is devoid of all economically viable use and the value of the Property has been "severely, significantly and materially reduced and damaged." (Compl. ¶¶ 29–30.) Defendant argues that plaintiff has failed to state a plausible takings claim because, according to public documents, the Property has not been deprived of all value. (Def.'s Br. at 12.)

To state a federal categorical regulatory takings claim, the challenged regulation must extinguish "all economically beneficial or productive use" of the subject property. Lucas, 505 U.S. at 1027–29 (1992); see also Gazza v. New York State Dep't of Envtl. Conservation, 89 N.Y.2d 603, 618–619 (N.Y. 1997) (holding that to state a takings claim under the New York State constitution, the challenged regulation must entirely dissolve the economic value of the property). A categorical taking only occurs when the challenged regulation "wholly eliminate[s] the value" of the property in "the extraordinary circumstance when no productive or economically beneficial use of land is permitted." Lucas, 505 U.S. at 1019; see also Merrick Gables Ass'n, Inc. v. Town of Hempstead, 691 F. Supp. 2d 355, 360 (E.D.N.Y. 2010) ("[A] governmental regulation that simply causes a diminution in property values does not, standing alone, provide the basis for a regulatory takings claim.").

In analyzing a partial regulatory taking claim under the Penn Central framework, courts

9

must weigh:

> "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits of the economic life to promote the common good."

Lingle, 544 U.S. at 538–39 (citing Penn Central, 438 U.S. at 124) (internal quotation marks omitted). Although evaluation of the Penn Central factors "is essentially an ad hoc, factual inquiry," a single factor may carry such force as to dispose of the whole takings claim. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005 (1984).

In analyzing the economic impact of a regulation, a court must assess the property's remaining economically viable uses rather than look exclusively to the property's accounting or appraisal value on paper. See Lucas, 505 U.S. at 1027. A change is market value is a measure of—not a substitute for—economically viable use. Resource Inv., Inc. v. United States, 85 Fed. Cl. 447, 486–87 (Fed. Cl. 2009); Palazzolo, 533 U.S. at 631 ("Assuming a taking is otherwise established, a State may not evade the duty to compensate on the premise that the landowner is left with a token interest."). In determining economic impact, the Second Circuit has made clear "that prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred." Sadowsky v. City of New York, 732 F.2d 312, 317 (2d Cir. 1984). Instead, "the key question [is] not whether a particular remaining use would be profitable for [the property owner], but rather whether [the property owner] could sell the property to someone for that use." Id. at 318.

Defendant argues that the Property maintains some economic value, evidenced by a (now expired) offer to purchase the property for $203,510 and a Nassau County tax assessment that the

10

fair market value of the property is $203,510.[2] (Def.'s Br. at 16.) Defendant also argues that the property retains economically viable uses because it can be used for recreational purposes, such as picnicking, swimming, or camping. (Id.)

While the Court acknowledges that the above facts may indicate that the Property maintains some economically viable uses that would defeat a categorical takings claim, the Court cannot determine at the motion to dismiss stage whether it is possible that "[s]uch a scintilla of value is insufficient to defeat an otherwise-viable takings claim." Resource Inv., Inc., 85 Fed. Cl. at 487–88.

Likewise, the Court declines to dismiss plaintiff's partial regulatory takings claim. Nevertheless, the Court emphasizes that plaintiff appears to have minimal, if any, reasonable investment-backed expectations, and the nominal degree to which the regulation interfered with plaintiff's legitimate property interests may outweigh the magnitude of the impact of the Elevation Restriction. See Lingle, 544 U.S. at 539–40. The ultimate resolutions of these questions, however, comes down to "ad hoc, factual inquiries" into the economically beneficial uses of the property that are not appropriately determined at the motion to dismiss stage. See Lucas, 505 U.S. at 1015.

Thus, plaintiff has adequately stated a claim for an unconstitutional categorical regulatory taking and partial regulatory taking because the effect of the Elevation Restriction on the property's economically beneficial uses is not clear at this stage. The Court denies defendant's motion to dismiss.

---

[2] The parties have submitted a number of exhibits and affidavits with this motion for the Court to consider. While the Court may rely on matters of public record in determining a motion to dismiss, see Soundview Assocs. v. Town of Riverhead, 725 F. Supp. 2d 320, 337 n.4 (E.D.N.Y.2010), the Court does not believe the submitted exhibits and affidavits are sufficient to determine the property's economic value or economically beneficial uses.

11

### III. Conclusion

For the reasons set forth above, defendant's motion to dismiss is denied. The parties are directed to proceed with discovery.

**SO ORDERED.**

Date: February 25, 2016
Central Islip, New York

                _____/s/ (JMA)_____
                Joan M. Azrack
                United States District Judge